UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LAURETE CARI AND RROK CARI,                                   Docket No.

                *Plaintiffs*,

       -against-                                                      **COMPLAINT**

CENTENNIAL PROPERTIES NY INC. D/B/A
CENTENNIAL PROPERTIES NY and STEVEN          **PLAINTIFFS DEMAND**
CROMAN, JOINTLY AND SEVERALLY,                  **TRIAL BY JURY**

                *Defendants*.
------------------------------------------------------------------X

       PLAINTIFFS LAURETE CARI and RROK CARI ("PLAINTIFFS") hereby alleges and complains through their attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, as against DEFENDANTS CENTENNIAL PROPERTIES NY INC. D/B/A CENTENNIAL PROPERTIES NY and STEVEN CROMAN (collectively, "DEFENDANTS") as follows:

## NATURE OF THE CASE

1. PLAINTIFFS assert a minimum wage claim under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("Labor Law") against DEFENDANTS for their failure to pay PLAINTIFFS the federal and state minimum wage for all hours worked per week.

2. PLAINTIFFS also assert claims under the Labor Law against DEFENDANTS for their (1) failure to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab Law § 195.1 and (2) failure to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, supplemental jurisdiction over PLAINTIFFS' state law claims under 28 U.S.C. § 1367 and

1

jurisdiction over PLAINTIFFS' FLSA claims under 29 U.S.C. § 216(b).

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2): DEFENDANT CENTENNIAL PROPERTIES NY is a resident of this District; and a substantial part of the events giving rise to the action occurred in this District.

5. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

6. **PLAINTIFF LAURETE CARI (hereinafter "PLAINTIFF LAURETE")** is, at all relevant times, an adult female residing in New York, New York. At all relevant times to the Complaint, DEFENDANTS employ PLAINTIFF as a building Superintendent.

7. **PLAINTIFF RROK CARI (hereinafter "PLAINTIFF RROK")** is, at all relevant times, an adult male residing in New York, New York. At all relevant times to the Complaint, DEFENDANTS employed PLAINTIFF RROK as a building Superintendent. DEFENDANTS employed PLAINTIFF RROK from September 2021 to late January 2024.

8. **DEFENDANT CENTENNIAL PROPERTIES NY INC. D/B/A CENTENNIAL PROPERTIES NY (hereinafter "DEFENDANT CENTENNIAL")** is a property management and brokerage company in New York. DEFENDANT CENTENNIAL is a domestic business corporation that is organized under New York and is authorized to do business in the State of New York, with its principal place of business at 740 Broadway, New York, New York 10003.

9. DEFENDANT CENTENNIAL is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. DEFENDANT CENTENNIAL is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it purchases maintenance supplies and equipment that have been produced for and moved in commerce, rents apartments to hundreds of people all over the United States, it has employees

2

that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00.

10. **DEFENDANT STEVEN CROMAN (hereinafter "DEFENDANT CROMAN")** is the supervisor and owner of DEFENDANT CENTENNIAL. As a supervisor and owner, DEFENDANT CROMAN controlled, *inter alia*, the terms and conditions of PLAINTIFFS' employment, including, their schedule, work assignments and duties, compensation and hiring. DEFENDANT CROMAN is also responsible for oversight over every aspect of DEFENDANT CENTENNIAL'S business and makes all managerial decisions and could affect the terms and conditions of PLAINTIFFS' employment.

11. DEFENDANT CROMAN is the owner of at least two residential apartment buildings at DEFENDANT CENTENNIAL and diligently performed on-site supervision at the buildings, making unannounced stops at the buildings at different times of the day to interact with PLAINTIFFS and residents, collect rent checks and perform routine on-site inspections.

12. DEFENDANTS had control over PLAINTIFFS' working conditions, over the unlawful policies and practices alleged herein, and had the ability to affect the terms and conditions of PLAINTIFS' employment.

13. DEFENDANTS are covered employers within the meaning of the FLSA and NY Labor Law, and, at all relevant times, employed PLAINTIFFS.

14. DEFENDANT CENTENNIAL, at all relevant times, has more than 15 employees.

## MATERIAL FACTS

15. DEFENDANTS hired PLAINTIFFS as Superintendents to manage two residential apartment buildings at (1) 233 East 29th Street, New York, New York 10016 (hereinafter "building 233") and (2) 209 East 25th Street, New York, New York 10010 (hereinafter "building 209").

16. DEFENDANTS employed PLAINTIFF LAURETE as a Superintendent for building 209

from August 31, 2021 to February 14, 2024. PLAINTIFF LAURETE is still the Superintendent for building 233.

17. DEFENDANTS employed PLAINTIFF RROK as a Superintendent for buildings 209 and 233 from August 31, 2021 to January 30, 2024.

18. At all relevant times, building 209 was and is comprised of 46 residential units.

### **DUTIES PERFORMED, HOURS WORKED AND UNLAWFUL PAY PRACTICES**

19. As Superintendents, PLAINTIFFS are and were responsible for ordinary maintenance and repairs at the buildings, electrical work, removing furniture, resolving tenant issues, and occasional garbage removal.

20. At all relevant times, DEFENDANTS required PLAINTIFFS to always be on-call, twenty-four hours per day, seven days per week, in order to respond to routine service requests that residents from Building 209 made during the weekend and graveyard hours.

21. Thus, DEFENDANTS required PLAINTIFFS to either work or be engaged in work, for every hour of every day throughout the day for building 209.

22. As a result, PLAINTIFFS did not have a set work schedule every week; instead, they were required to diligently respond to routine service requests that residents from building 209 made at any time, including on Saturday and Sunday.

23. PLAINTIFFS were not residential Superintendents because they did not live in building 209.

24. On August 31, 2021, DEFENDANTS' Manager, Eric [last name unknown], informed PLAINTIFFS that DEFENDANTS needed Superintendents to manage building 209.

25. Mr. Eric assured PLAINTIFFS that DEFENDANTS would pay them a weekly salary for all work performed as the Superintendents of building 209.

26. Later that day, when PLAINTIFFS arrived at DEFENDANTS' office, Eric once again assured PLAINTIFFS that DEFENDANTS would pay them for all work performed as

4

Superintendents of building 209.

27. From September 2021 to February 14, 2024, PLAINTIFF LAURETE regularly worked 7 days a week at building 209, averaging between 20 to 25 hours per week.

28. From September 2021 to January 30, 2024, PLAINTIFF RROK regularly worked 7 days a week at building 209, averaging at least 20 hours per week.

29. Despite working these hours at building 209, during most of the PLAINTIFFS' employment, DEFENDANTS did not pay them *any* compensation for work performed as Superintendents at building 209.

30. Throughout their employment, DEFENDANTS did not pay PLAINTIFFS a weekly salary based on the number of units in building 209 or a minimum wage for each hour they worked per week at building 209.

31. From September 2021 to November 2021, DEFENDANTS only paid PLAINTIFFS for 3 hours worked per week at building 209 for their time spent removing garbage.

32. During this time period, DEFENDANTS paid PLAINTIFFS, via direct deposit, for only 3 hours worked per week regardless of the number of hours they actually worked per week.

33. From September 2021 to November 2021, DEFENDANTS did not pay PLAINTIFFS for all of the hours they worked at the minimum wage in accordance with the FLSA and the Labor Law's Minimum Wage Order for the Building Service Industry (hereinafter "Labor Law's Minimum Wage Order").

34. Starting November 2021 up until February 14, 2024, DEFENDANTS did not pay PLAINTIFF LAURETE the minimum wage for all hours she worked per week under the FLSA and the Labor Law's Minimum Wage Order.

35. From November 2021 to January 30, 2024, DEFENDANTS did not pay PLAINTIFF RROK the minimum wage for all hours he worked per week under the FLSA and the Labor Law's

5

Minimum Wage Order.

36. In late February 2024, PLAINTIFFS' supervisor, Annabel Santiago, contacted PLAINTIFF LAURETE to ask her if PLAINTIFFS would agree to work as superintendents at building 209.

37. Ms. Santiago told PLAINTIFF LAURETE that if PLAINTIFFS agreed to work as the Superintendents in building 209, DEFENDANTS would start paying them.

38. In response, PLAINTIFF LAURETE asked Ms. Santiago whether DEFENDANTS would pay PLAINTIFFS for all the work they performed in the past three years in building 209.

39. Ms. Santiago said, "*no only for future work.*"

**COMPLAINTS ABOUT DEFENDANTS' UNLAWFUL COMPENSATION POLICIES**

40. Throughout their employment, PLAINTIFFS frequently complained to DEFENDANTS, including DEFENDANT CROMAN, DEFENDANT CROMAN'S wife and son, Harriet Croman and Jake Croman, their manager, Ms. Shields, and DEFENDANTS' Human Resource Manager, Landis Thomas, about DEFENDANTS' failure to pay them *any* compensation for work performed as Superintendents of building 209.

41. When PLAINTIFFS complained about not being paid, DEFENDANTS regularly assured them that they will get paid or that they are *"awaiting extra approvals which is why it was taking time"* to get paid.

42. However, DEFENDANTS' assurances were false, and they knew it to be false at the time they made these assurances as they never had the intention to pay PLAINTIFFS for any work performed in building 209.

43. For instance, in November 2021, having worked for over two months in building 209, PLAINTIFFS went to DEFENDANTS' office to drop off the keys to building 209 because they were not getting paid for time actually worked in building 209.

44. When they arrived at the office, PLAINTIFFS complained that they were working long hours and DEFENDANTS were only paying them for 3 hours of work per week for garbage removal.

45. Throughout their employment, PLAINTIFFS estimate that they visited DEFENDANTS' offices at least three times to drop off the keys to building 209 because they were not getting paid.

46. Every time PLAINITFFS attempted to resign from their position as Superintendents at building 209, DEFENDANTS refused to accept their resignation, acknowledged that PLAINTIFFS have not been paid *any* compensation for all the hours they worked at building 209, and continued to promise them that they were going to get paid.

47. In early 2024, after three years of non-payment for work performed at building 209 and in desperate need of money for PLAINTIFF RROK'S hospital bills, PLAINTIFF LAURETE proposed that DEFENDANTS only pay PLAINTIFFS for 10 hours worked per week during the last three years, which was a "*minimum*" estimate since they each regularly worked at least twice as many hours per week.

48. Even after this proposal, DEFENDANTS' response was "*we will discuss*" and "*let you know*."

49. While DEFENDANTS failed to pay PLAINTIFFS any compensation for time actually worked in building 209, PLAINTIFFS were getting paid per week for work performed in building 233.

50. Despite PLAINTIFFS' repeated complaints and DEFENDANTS' active refusal to pay them any compensation for work performed in building 209, PLAINTIFFS continued to work at building 209 with *zero* compensation because DEFENDANTS continued to promise them compensation and they were afraid that if they stopped working in building 209, DEFENDANTS would terminate them as Superintendents from building 233, which was the

only source of income they received from DEFENDANTS.

## **LABOR LAW NOTICE AND WAGE STATEMENT VIOLATIONS**

51. DEFENDANTS paid PLAINTIFFS via direct deposit for work performed in building 233 throughout their employment.

52. From September 2021 to November 2021, DEFENDANTS paid PLAINTIFFS via direct deposit for work performed in building 203.

53. DEFENDANTS did not provide PLAINTIFFS with the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in their employment.

54. DEFENDANTS did not provide PLAINTIFFS with any wage statements under N.Y. Lab Law § 195.3 with every wage payment.

55. By DEFENDANTS failing to provide PLAINTIFFS with the Notice and Acknowledgement of Payrate and Payday and accurate wage statements with every wage payment, DEFENDANTS willfully denied PLAINTIFFS the information needed to determine whether they were being paid in accordance with the Labor Law's minimum wage requirements.

56. Had DEFENDANTS provided PLAINTIFFS with the Notice and Acknowledgement of Payrate and Payday and accurate wage statements with every wage payment, PLAINTIFFS would have had enough information to determine that throughout their employment they were not being paid a minimum wage in accordance with the Labor Law.

## **FIRST CAUSE OF ACTION**
## **FAILURE TO PAY THE MINIMUM WAGE**
## **UNDER THE FLSA**
## **(against DEFENDANTS)**

57. PLAINTIFF repeats and realleges every preceding allegation as if set forth fully herein.

58. At all relevant times, DEFENDANTS employed PLAINTIFFS within the meaning of the

FLSA.

59. DEFENDANTS have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce under the FLSA. 29 U.S.C. §§ 206(a) and 207(a).

60. DEFENDANTS' annual gross volume of business, upon information and belief, is at least $500,000.00.

61. DEFENDANTS were required to pay PLAINTIFFS the federal mandated minimum wage for all hours worked in a workweek under the minimum wage provisions set forth in the FLSA, 29 U.S.C. § 201 et seq., including 29 U.S.C. § 206(b).

62. At all relevant times, DEFENDANTS failed to pay PLAINTIFFS the federally mandated minimum wage for each hour worked in building 209 per workweek, making them liable for those hours at the federally mandated minimum wage.

63. DEFENDANTS have willfully violated the FLSA by failing to pay PLAINTIFFS the federally mandated minimum wage for all hours worked in a workweek.

64. DEFENDANTS were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

65. DEFENDANTS have not made a good faith effort to comply with the FLSA with respect to PLAINTIFFS' compensation.

66. DEFENDANTS have failed to make, keep and preserve records with respect to their employees, including PLAINTIFFS, sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA. 29 U.S.C. §§§ 201, 206(b) and 215(a).

67. In failing to compensate PLAINTIFFS for all compensable hours worked, DEFENDANTS violated the FLSA and the regulations thereunder, including 29 C.F.R. §§ 785.13 and 785.11.

68. Due to DEFENDANTS' violations of the <u>FLSA</u>, PLAINTIFFS are entitled to recover from DEFENDANTS their unpaid wages, statutory liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest and such other legal and equitable relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**FAILURE TO PAY THE MINIMUM WAGE**
**UNDER THE NEW YORK LABOR LAW**
**(against DEFENDANTS)**

69. PLAINTIFFS repeat and reallege every preceding allegation as if set forth fully herein.

70. DEFENDANTS are "employers" under <u>N.Y. Lab. Law</u> §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed PLAINTIFFS.

71. The wage provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to DEFENDANTS and protect PLAINTIFFS.

72. Under the Labor Law's Minimum Wage Order for the Building Service Industry and supporting New York State Department of Labor Regulations, DEFENDANTS were required to pay PLAINTIFFS a weekly minimum wage based on the number of units in the building, subject to a cap.

73. As an employer within the meaning of the Labor Law, DEFENDANT CROMAN is individually liable.

74. DEFENDANTS failed to pay PLAINTIFFS any compensation, including a weekly minimum wage based on the number of units in building 209.

75. DEFENDANTS have willfully violated the Labor Law by knowingly and intentionally failing to pay PLAINTIFFS any compensation, including a weekly minimum wage based on the number of units in the building for work performed in building 209.

76. Due to DEFENDANTS' Labor Law violations, PLAINITFFS are entitled to recover from

10

them their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

## THIRD CAUSE OF ACTION
## FAILURE TO PROVIDE 195.1 NOTICE
## UNDER THE NEW YORK LABOR LAW
## (against DEFENDANTS)

77. PLAINTIFFS repeat and reallege every preceding allegation as if set forth fully herein.

78. DEFENDANTS willfully and repeatedly failed to supply PLAINTIFFS with the required Notice and Acknowledgement of Pay Rate and Payday under Labor Law § 195.1(a) within ten business days of their first employment date or at any time during their employment.

79. DEFENDANTS' failure to provide PLAINTIFFS with the required Notice and Acknowledgement of Pay Rate and Payday harmed them by denying them the information necessary to determine whether they were being paid in accordance with the Labor Law's Minimum Wage Order for the Building Service Industry minimum wage requirement.

80. Due to DEFENDANTS' violations of Labor Law § 195.1, PLAINTIFFS are entitled to recover from DEFENDANTS $50.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00 reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-b (2016).

## FOURTH CAUSE OF ACTION
## FAILURE TO PROVIDE 195.3 WAGE STATEMENT
## UNDER THE NEW YORK LABOR LAW
## (against DEFENDANTS)

81. PLAINTIFFS repeat and reallege every preceding allegation as if set forth fully herein.

82. DEFENDANTS have willfully failed to supply PLAINTIFFS with the required accurate wage statements with every payment of wages, violating Labor Law § 195.3.

83. DEFENDANTS' failure to provide PLAINTIFFS with the required accurate wage statements with every payment of wages harmed them by denying them the information necessary to

determine whether they were being paid in accordance with the Labor Law's Minimum Wage Order for the Building Service Industry minimum wage requirement.

84. Due to DEFENDANTS' violations of Labor Law § 195.3, PLAINTIFFS are entitled to recover from DEFENDANTS $250.00 for each workday that the violations occurred or continue to occur, or at least a total of $5,000.00, as provided for by Labor Law § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS respectfully requests a judgment granting the following relief against DEFENDANTS:

1. Accepts jurisdiction over this matter;
2. Impanels and charges a jury with respect to the causes of action;
3. An award for unpaid minimum wage under the FLSA and N.Y. Labor Law;
4. An award for failing to provide the N.Y. Lab. Law § 195.1 Notice;
5. An award for failing to provide the N.Y. Lab. Law § 195.3 Statements;
6. An award of liquidated damages as a result of DEFENDANTS' Labor Law violations;
7. An award of liquidated damages as a result of DEFENDANTS' willful FLSA violations;
8. DEFENDANTS being jointly and severally liable;
9. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and Labor Law.;
10. Attorneys' fees, costs and expenses to the fullest extent permitted by law; and
11. Any other relief that this Court deems just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to *Fed. R. Civ. P*. 38(b), PLAINTIFFS demand a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
           November 21, 2024

                                        PHILLIPS & ASSOCIATES,
                                        ATTORNEYS AT LAW, PLLC

By:    /s/ Gregory Calliste Jr.
           Gregory Calliste, Jr.. Esq.
           Bayron Flores-Tapia, Esq.
           *Attorneys for PLAINTIFFS*
           45 Broadway, Suite 430
           New York, NY 10006
           T: (212) 248-7431
           gcalliste@tpglaws.com
           bflorestapia@tpglaws.com